JOHN JUDGE *vs.* CHARLES PFAFF & another.

Suffolk.    March 25, 1898. — May 19, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Conveyance of Real Estate in Trust — Power of Sale — Statute — Redemption.*

A conveyance in trust was made both to secure and extinguish the debt which it
mentioned. It provided that the trust should continue until the debt was ex-
tinguished unless the trustee agreed to its revocation by the grantor. In pur-
suance of this purpose the trustee was given different and more extensive
powers than those contained in simple mortgages. The power to sell was not
the usual one to sell upon a future default which might or might not happen,
but a power forthwith or at any time to convert the property conveyed, or any
part of it, into money. It was coupled with a power to exchange, and stood
alongside of a power to convert realty into personalty, and personalty into
realty; and the proceeds of a partial sale might be used to extinguish encum-
brances upon the residue. *Held,* on a bill in equity against the trustee for a
reconveyance and that he be enjoined from making any further conveyance,
that, while the court assumed for the purposes of argument, although the
deed expressly contemplated investments, that upon a sale of the whole it
would be the trustee's duty to apply so much of the proceeds as was neces-
sary to the payment of the debt, this fact was not sufficient to bring the power

within Pub. Sts. c. 181, § 17, requiring the publication of notice before a sale under an ordinary mortgage power, nor within § 21 of the same chapter; that the trustee had power to bind himself and the trust estate by contract to make any sale which he had power to execute; and that, assuming that the plaintiff had a right to redeem, he must take the fund as he found it, subject to any changes lawfully made by the trustee, including contracts which in equity have the effect of conveyances.

BILL IN EQUITY, filed in the Superior Court, February 7, 1898, praying for a reconveyance to the plaintiff of certain real estate which he had conveyed to the defendant Pfaff as trustee, to secure certain indebtedness due from the plaintiff to certain parties, and praying also that the defendant Pfaff be enjoined from making any conveyance of the real estate to any other person or persons, and for an accounting.

The bill alleged that on January 8, 1897, the plaintiff conveyed to the defendant Pfaff, subject to mortgages amounting to $75,686, six certain parcels of land described, in trust, the deed, after the habendum clause, containing the following provisions, among others :

" Whereas the said grantor is jointly indebted to the H. & J. Pfaff Brewing Company, being a corporation duly organized by law and having its usual place of business in said Boston, and to Joaquin K. Souther and Clarence V. Souther, doing business under the firm name of J. K. Souther & Sons, in said Boston, in the sum of fifteen thousand one hundred dollars ; and

" Whereas the said grantor has requested the said H. & J. Pfaff Brewing Company and J. K. Souther & Sons to hereafter advance him seventy-nine hundred dollars, which they hereby jointly obligate themselves to do.

" Now, therefore, as and for security for the aggregate of said indebtedness and advance, to wit, the sum of twenty-three thousand dollars, the said grantee, his heirs and assigns, shall hold said property in trust, as follows :

" I. To hold, manage, and take care of the same as a trust estate or fund, with the following special powers, as well as the ordinary powers of management, to wit : . . .

" (b) To sell, partition, exchange, or release any of the property, real or personal, at any time belonging to the trust estate as a whole or in parcels, for cash or on credit, at public or private sale, at such time or times and subject to such terms, restrictions,

conditions, and agreements as he shall see fit to give deeds accordingly, and with or without covenants ; and such sale, partition, exchange, or release shall forever bar me and all persons claiming under me from all right and interest in said premises, whether at law or in equity, and that the same may be made without further notice to me or permission of the court to sell, and I hereby for myself, my heirs and assigns, covenant with the grantor and his heirs and assigns that in case a sale or sales shall be made I or they will upon request execute, acknowledge, and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale; provided, however, that no sale as aforesaid shall be made within one year from the date of these presents.

" (*c*) To convert realty into personalty, and personalty into realty.

" (*d*) To use such cash as may at any time belong to the trust fund for the purpose of reducing or paying off mortgages or other encumbrances upon it, or to employ such cash to the reduction of the said indebtedness of twenty-three thousand dollars of the grantor to the H. & J. Pfaff Brewing Company and J. K. Souther & Sons.

" (*e*) To borrow money on such terms as they see fit, either for the purpose of reducing, paying off, taking up, or extending mortgages or other encumbrances at any time existing upon the trust estate, or any part thereof, or for the purpose of building or making permanent improvements upon any real estate at any time belonging to the trust, or to apply the same to the reduction of the said indebtedness of twenty-three thousand dollars ; to secure such loans by notes, bonds, deeds, power of sale, mortgages, or other obligations binding the trust estate, or any part thereof, in mortgage, pledge, or otherwise, as he shall deem fit; to extend or renew any existing mortgage if he sees fit, and with the following special duties, to wit :

" (*a*) To pay out of the principal of the trust estate all brokers' commission, counsel fees, and other expenses connected with loans to or by the trustee, of sales, exchanges, partitions, or releases made by him, or of purchases or investments, or any expenses incurred in the management of said property and the employment of agents. . . .

" (*b*) To pay all taxes, assessments, disbursements, charges, and expenses connected with said trust estate. . . .

" IV. And after retaining whatever sums he shall see fit to provide for the payment of mortgages or other encumbrances on the estate, and after deducting all expenses from the income received, to pay out the balance of the residue or net income of the trust estate for the purpose of paying the interest on and of reducing the principal of the aforesaid indebtedness of twenty-three thousand dollars. . . .

" VIII. At any time during the continuation of this trust the provisions may be altered or annulled by any instrument signed by me and the trustee, and duly recorded with Suffolk Deeds, the intention of this provision being to reserve to myself, with the consent of the trustee, which he is to exercise according to his discretion, a power of revocation. Unless sooner terminated, this trust shall continue until the said indebtedness of the said grantor to the said H. & J. Pfaff Brewing Company and J. K. Souther & Sons shall have been paid in full, and upon such payment this said trust shall terminate, and the said trustee shall pay over and convey the trust property remaining in his hands to the said grantor, his heirs, administrators, and assigns, or to whomsoever he shall in writing designate, or by his last will, duly probated, appoint."

The bill further alleged that the plaintiff had asked the defendant Pfaff to account, but that he had refused so to do ; that the plaintiff had reason to believe that the defendant Pfaff was about to convey the real estate, and the plaintiff offered to pay to the defendant Pfaff whatever amount should be due from the plaintiff to the H. and J. Pfaff Brewing Company and J. K. Souther and Sons.

The answer alleged that the plaintiff had no right by the deed to a reconveyance of any of the property except such as should remain subject to the trust, and unconveyed at the time of payment ; that the sales provided for in the deed gave to the trustee the most ample powers to sell in his discretion, the only limitation being that the same should not be exercised within one year from the date of the conveyance ; that on December 7, 1897, the plaintiff was notified in writing that the trustee would sell part or the whole of the estate, and that after the expiration

of the year, on January 8, 1898, the plaintiff and his attorney were repeatedly notified orally that the trustee proposed to sell; that on January 20, 1898, the defendant entered into a written agreement, a copy of which was annexed, to sell all the premises to William K. Porter for $88,000, which sum was in excess of the tax valuation, and was as large a price as by any reasonable expectation the trustee could obtain for the property. The bill also alleged that the defendant had never, until the filing of the bill, offered to pay the indebtedness due under the trust agreement, nor had he until that date ever asked for an accounting, and that the defendant was and always had been ready to account.

William K. Porter, who was on motion admitted a party defendant, filed an answer, in which he alleged that he entered into the agreement to purchase the property in good faith, and that the same was legal and binding.

Hearing before *Mason*, C. J., who entered a decree that, it being conceded by counsel that the right to redeem subject to the agreement between the defendant Pfaff and William K. Porter would be of no value and was not desired, and that, unless the plaintiff was entitled to redeem free from an obligation to convey pursuant to said agreement, there was no occasion to ask for an accounting at the time, the said agreement between Pfaff and Porter was a valid contract, and by reason thereof the plaintiff could redeem only subject to the obligation to convey under the agreement, and the bill was dismissed, with costs. The plaintiff appealed to this court.

*H. P. Harriman*, (*P. Mansfield* with him,) for the plaintiff.

*E. B. Hale & D. A. Dorr*, (*R. A. Jordan* with them,) for the defendants, were not called upon.

HOLMES, J. The instrument in question is a conveyance in trust, made for the purpose not only of securing but of extinguishing the debt which it mentions. It expressly provides that the trust shall continue until the debt is extinguished, unless the trustee agrees to its revocation by the grantor. In pursuance of this purpose the trustee is given different and more extensive powers than those contained in simple mortgages. The power to sell is not the usual power to sell upon a future default which may or may not happen, but a power forthwith or at any time

to convert the property conveyed, or any part of it, into money. It is coupled with a power to exchange, and stands alongside of a power to convert realty into personalty, and personalty into realty. The proceeds of a partial sale may be used to extinguish encumbrances upon the residue, and while we assume for the purposes of argument, although the deed expressly contemplates investments, that upon a sale of the whole it would be the trustee's duty to apply so much of the proceeds as are necessary to the payment of the debt; we do not think this fact sufficient to bring the power within the operation of Pub. Sts. c. 181, § 17, requiring a publication of notice before a sale under an ordinary mortgage power. That chapter does not prevent a debtor from conveying property in satisfaction of a debt, either immediately or through the mediation of a trustee with power to sell and apply the proceeds, and § 17 does not interfere with or regulate the exercise of such a power. The contract set up is equally unaffected by § 21, giving a right of redemption unless there has been an entry and three years' possession, or a sale under a power of sale. It is unnecessary to consider whether, if a mortgagee selling at a common foreclosure sale should make a contract in order to cover a short time necessarily spent in completing the conveyance, such a contract would not be a sale within the meaning of § 21.

There is no doubt that the trustee had power to bind himself and the trust estate by contract to make any sale which he had power to execute. *Shannon* v. *Bradstreet,* 1 Sch. & Lef. 52, 59. *Lowe* v. *Swift,* 2 B. & B. 529, 535. *Clarke* v. *Moore,* 1 Jon. & Lat. 723, 727.

It follows that, assuming without discussion that the plaintiff had a right to redeem the fund, (*Parks* v. *Hall,* 2 Pick. 206, 210, 211,) he must take the fund as he finds it, subject to any changes in form lawfully made by the trustee, including contracts which in equity have the effect of conveyances. As the plaintiff did not wish to redeem upon these terms the bill properly was dismissed.

*Bill dismissed.*